UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF RHODE ISLAND

FILED
2014 JUL 10 A 10: 12
U.S. DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| GOLOCAL 24, LLC,<br><br>Plaintiff<br><br>v.<br><br>JOSH CONNER DESIGN,<br>JOSH CONNER<br><br>Defendants | C.A. NO: _____<br><br>CA 14 - 311 ML |

## COMPLAINT

NOW COMES GOLOCAL 24, LLC, ("GoLocal"), by and through its attorneys, as and for its Complaint against JOSH CONNER DESIGN and JOSH CONNER, (together "Defendants"), and states and alleges as follows:

## THE PARTIES

1. Plaintiff GoLocal 24, LLC is a Rhode Island limited liability company with its principal place of business located at 44 Weybosset Street, Providence, Rhode Island 02903.

2. Upon information and belief, Josh Conner Designs is a freelance website development company with its principal place of business located at 1328 Hibbard Dr., Unit D, Stowe, Ohio. Based on its website, JCD "specializes in ExpressionEngine development" and also offers "maintenance, hosting and backup services for [] clients."

3. Upon information and belief, Josh Conner is the owner and operator of Josh Conner Designs and is a resident of Akron, Ohio.

## JURISDICTION AND VENUE

4. Subject matter jurisdiction is appropriate in this case because the amount in controversy exceeds $75,000, exclusive of interests and costs; the parties are citizens of different

states; and this Court has supplemental jurisdiction over certain claims. *See* 28 U.S.C. §§ 1332, 1367(a).

5. This Court has *in personam* jurisdiction over non-resident the Defendants pursuant to Rhode Island's Long Arm Statute, R.I. Gen. Laws § 9-5-33, because Defendants voluntarily transacted business, and engaged in wrongful acts that are the subject of this Complaint, within the State of Rhode Island. *See* R.I. Gen. Laws § 9-5-33. As specified hereafter, Defendants committed torts and breaches, in whole or in part, in Rhode Island, and could reasonably anticipate being subject to the jurisdiction of Rhode Island courts. This suit against Mr. Conner and JCD will not offend traditional notions of fair play and substantial justice and is consistent with due process of law.

6. Venue is proper in this judicial district because Plaintiff GoLocal is a Rhode Island company and a substantial part of the acts giving rise to this Complaint occurred in this district. *See* 28 U.S.C. § 1391.

## FACTS

*GoLocal's Business*

7. GoLocal uses the top journalists in southern New England to cover local stories in sports, news, business, weather, politics, arts, and entertainment.

8. Through its branded, credible, and respected contributors from across New England, GoLocal breaks the biggest local stories, and with in-depth investigative journalism, allows readers to go as deep as they wish into local issues.

9. GoLocal delivers its content online through multimedia, written, and video platforms via the websites GoLocalProv.com and GoLocalWorcester.com.

*GoLocal's Plans to Expand*

10. GoLocal is a growing business with plans to expand into other markets. As part of its expansion plans, GoLocal began researching what other markets might be a good fit for its unique brand of in-depth journalism and local coverage. GoLocal began making plans to expand into the Portland, Oregon market by early summer 2014.

11. As part of its expansion plans, GoLocal investigated what back-end hardware and software improvements it could make to allow easy connectivity between its individual websites and parent company along with front end improvements for end users. Allowing readers to view GoLocal's content on computers, tablets, and mobile devices is an important component of its business model, and GoLocal wanted a solution that would cover each of these mediums and would also be scalable as it moved into other markets.

12. Accordingly, in early 2014 GoLocal began taking steps to upgrade its platform and servers. Moving from shared servers to dedicated servers would allow GoLocal to better reach its audience, minimize complexity in its systems, and allow for scaling from its current size to a larger size in the future. The ultimate goal of this project was to have a multi domain tool, which would connect each of the various GoLocal websites instantly. All of the websites would be connected on a single database.

*GoLocal's Retention of Defendants to Redesign its Web Presence*

13. Defendants Josh Conner and JCD market themselves through the website joshconnerdesign.com. On their website, Defendants promote their web development services for businesses. Defendants "specialize[] in Expression Engine development" and offer "maintenance, hosting, and backup services for clients." Expression Engine is a Content Management System that provides "flexibility" and "can easily scale for your business needs tomorrow."

14. In early 2014, GoLocal's Chief Executive Officer contacted Josh Conner of JCD regarding upgrading GoLocal's server and platform.

15. Defendants were eager to land a lucrative contract with GoLocal, and JCD and its owner Josh Conner made various representations and proposals to GoLocal which Defendants knew or should have known were false. Further, Mr. Conner and JCD failed to make numerous representations that were required to make certain disclosures not false or misleading.

16. In January and February 2014, Mr. Conner held JCD out to GoLocal as an experienced, professional and skilled web development services provider and an expert in Expression Engine development. Defendants represented to GoLocal that it was experienced in Expression Engine upgrades and that it had a "team of qualified people" who were available to work on GoLocal's desired upgrade.

17. During these discussions in early 2014, Defendants represented that the planned Expression Engine upgrade and creation of a multi-domain tool was an appropriate fit for GoLocal's growing business, including its current stable of websites along with planned expansion to Portland and other markets. Defendants understood that GoLocal wanted a solution that would work as it continued to expand, and Defendants represented that they were experienced and committed to performing all required tasks to complete the server and platform upgrades on time. Defendants knew or should have known that these statements were not true at the time they were made, and upon information and belief, Defendants made these statements with the intent that GoLocal would rely on them.

18. GoLocal is not an experienced software developer, and it reasonably relied on Defendants' expertise in deciding how to upgrade its server and platform and retaining Defendants to complete this project.

19.     On or about February 27, 2014, GoLocal contracted with Defendants Josh Conner and JCD to redesign GoLocal's web presence. The agreement contemplated upgrading GoLocal's platforms in four phases.

20.     Work on all four phases was to be billed at $100 per hour with invoices and with payments to be made upon completion of each phase and with deadlines. The February agreement had firm deadlines for completion of each phase, and work on subsequent phases could not begin until work on all prior phases was completed.

21.     During Phase I, Defendants agreed to upgrade two websites operated by GoLocal, golocalprov.com and golocalworcester.com, from Expression Engine version 1.7.1 to version 2.7.3. Work was to be completed first on a development server, then reviewed by GoLocal, and then moved to production. GoLocal invested $2,200 in a development server. This process would enable GoLocal to catch issues with the way the website was delivered prior to it going live to GoLocal's audience. Defendants were scheduled to begin work on Phase I no later than February 25, 2014, with all work to be completed by March 10, 2014.

***Defendants' Failure to Perform***

22.     Defendants did not meet these initial deadlines for Phase I, and did not start working on the server upgrade until May 17, 2014

23.     Defendants delays in starting and completing Phase I prevented Defendants from working on Phases 2 through 4, and without completion of all phases as scheduled in the February contract, GoLocal could not complete its planned expansion into Portland and other cities. Defendants delays and failure to perform prevented GoLocal from entering the Portland market as scheduled, and as a result, deprived GoLocal of advertising revenue in this market.

24.     Instead, three months behind the contractually agreed schedule, Defendants were still working on Phase I in May 2014. However, instead of first completing upgrades in the

development server as the agreement contemplated, Defendants began making changes directly in the GoLocal production environment, which caused numerous problems with the delivery and functionality of the GoLocal websites. GoLocal found numerous errors and bugs in Defendants' work and repeatedly complained that Defendants needed to run quality control checks on their work.

25. For example, GoLocal distributes its reporting through daily eblasts, which are emailed to GoLocal subscribers. When subscribers open the email, they can click on links to stories that they are interested in reading. GoLocal uses the eblasts to drive traffic to its website, and it earns money from advertisers based on traffic to its site.

26. In the eblast to its subscribers on May 23, the GoLocal headline was corrupt and the click-through links to its website did not work on the mobile site. In other words, GoLocal sent an unreadable email to its 70,000 subscribers. Errors like this seriously damage GoLocal's reputation as an online news platform.

27. Two days later, GoLocal continued to experience problems with its websites. GoLocal's refresher codes were not working; slideshows of information and photos were not downloading immediately when users opened a story on their mobile devices; and ads were not running on its mobile website. GoLocal complained about these errors to Defendants, who maintained that the site was working.

28. On May 27, GoLocal complained that Defendants' performance was not satisfactory and the delays and failure to perform were harming GoLocal's business.

29. Notwithstanding the numerous uncorrected errors and the fact that the upgrade to version 2.7.3 was not complete, Defendants contended that they had completed all work on Phase I as of May 20 and were entitled to payment of $3,348.75. Defendants refused to complete additional work until they were paid.

30. It was only after GoLocal had invested time and money in reliance on Defendants' representations regarding the server upgrade, that Defendants advised for the first time that: (i) the MySQL/Expression Engine platform would not be "technically stable" for GoLocal; (ii) "Expression Engine and MySQL cannot handle the amount of content and traffic that your company is generating;" (iii) the "multi-domain concept does not appear to be technologically possible with the database and [Content Management System]" used by GoLocal; and (iv) if GoLocal merged its websites to a single database, "you are going to have major issues with the database locking tables."

31. The Defendants held themselves out as experts in Expression Engine upgrades before GoLocal hired them, and upon information and belief, Defendants knew or should have known that these issues would arise. Instead, Defendants admitted that they did not "anticipate[] the technological limitations and resulting stability issues of the software."

32. If Defendants had advised that the server and platform upgrades would not be "technically stable" for GoLocal's website or that consolidating its websites to a single database would not be "technically possible," GoLocal would not have hired Defendants to perform this work. Had Defendants advised GoLocal that Expression Engine was inappropriate for its business plan or that this upgrade would cause numerous problems with its website, GoLocal never would have retained Defendants to perform these services.

*Loss of Four Years of Data*

33. Search Engine Optimization ("SEO") is the process of impacting the visibility of a website through natural search results. In general, the higher a search result appears on a page, the more frequently the site appears on the results list and the more visitors the site will receive. SEO may be based on search terms, keywords, or other coding which results in moving the website up when people run internet searches.

7

34. SEO is a way that GoLocal drives traffic to its website. GoLocal's goal is for its articles, multimedia, and other content to appear high in the search results list when people in New England are looking for information on local stories. SEO data accumulates over time. The more "unique" visitors click on a story, the better the SEO results for that story will be.

35. As a result of Defendants' acts, omissions, and errors in working on GoLocal's server, GoLocal has lost four years of data and the number of "unique" visitors has decreased by by approximately 30%.

36. For example, GoLocal was the first news organization to break the story that the Providence Journal was being sold. The Boston Globe did not pick this story up until several hours after GoLocal had already reported this news. However, if you conduct an internet search for "sale of Providence Journal," the Boston Globe story appears as the first result and there are no results from GoLocal about this story on the first page. Losing its SEO data means that less people will see GoLocal stories, and loss of readership is very damaging to GoLocal's reputation and business.

37. Defendants acts and omissions directly caused this data lose, which has damaged, and continues to damage, GoLocal's business every day that it goes uncorrected.

## COUNT I – BREACH OF CONTRACT

38. GoLocal repeats and realleges each and every preceding paragraph as if fully restated herein.

39. GoLocal and Defendants agreed that JCD and Mr. Conner would perform website design services for GoLocal at a rate of $100 per hour. The contract included four phases, with progress payments at the completion of each phase.

40. Although Defendants were scheduled to complete Phase I by March 10, 2014, work did not commence until May 17, 2014.

8

41. Defendants have breached the agreement by, at a minimum, missing material performance deadlines and failing to complete the work in a satisfactory manner.

42. As a direct and proximate result of Defendants' breach, GoLocal has suffered, and continues to suffer, damages.

## COUNT II – MISREPRESENTATION

43. GoLocal repeats and realleges each and every preceding paragraph as if fully restated herein.

44. Mr. Conner represented that he and JCD were qualified to do Expression Engine and server upgrades. Mr. Conner represented that he had a "team of qualified people" to perform this work. Defendants represented that the upgrade was an appropriate fit for GoLocal's growing business, and Defendants were experienced and committed to performing all required tasks to complete the server and platform upgrades correctly and in a timely manner.

45. Upon information and belief, Mr. Conner knew that these statements were false when made, or made them with reckless disregard of the truth, because Mr. Conner and JCD did not have the experience or qualifications necessary to complete the website redesign as contracted. These misrepresentations and omissions were material to GoLocal's decision to retain Defendants to provide website redesign services.

46. Upon information and belief, Defendants made these false statements in order to induce GoLocal to hire the Defendants and to agree to pay for their services.

47. GoLocal reasonably relied on Defendants' misrepresentations by investing money to purchase a development server and granting Defendants' access to GoLocal's servers and websites to perform work.

48. As a direct and proximate result of GoLocal's reasonable reliance on Defendants' false statements and material omissions, GoLocal has suffered substantial damages.

WHEREFORE, GOLOCAL respectfully requests that this Court: (a) enter judgment and award damages in favor of GoLocal and against Defendants on all Counts; (b) award interest, attorneys' fees and costs to GoLocal and against Defendants on all counts; and (c) award any other relief the Court deems just and appropriate.

## JURY DEMAND

Atrion demands a trial by jury on all issues so triable.

GOLOCAL 24, LLC.

By its Attorneys,

_____
Rachelle R. Green (#5870)
rgreen@duffysweeney.com
DUFFY & SWEENEY, LTD
One Financial Plaza, Suite 1800
Providence, RI 02903
(401) 455-0700
Dated: July 10, 2014        (401) 455-0701

4832-3932-3163, v. 2